O

UNITED STATES DISTRICT COURT          NO JS-6

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MEZA, | Case No. CV 08-02237 DDP (JTLx) |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO AMEND COMPLAINT** |
| CITY OF LOS ANGELES, dba LOS ANGELES POLICE DEPARTMENT, an incorporated municipality; JUSTIN MALCUIT, an individual and employee of the CITY OF LOS ANGELES, | [Motions filed on February 2, 2009, Dkt. No. 24, February 18, 2009, Dkt. No. 36] |
| Defendants. | |

**I.   BACKGROUND**

This case arises from Plaintiff Luis Meza's arrest for second-degree robbery,[1] resulting in a six month incarceration, after which Plaintiff was acquitted at trial of all wrongdoing. Plaintiff alleges that there was no probable cause for his arrest and that Defendants unlawfully withheld exculpatory evidence, in violation of his constitutional rights.

On February 3, 2006, Officers Justin Malcuit and Richard Powers responded to a call from Domino's Pizza in Van Nuys at 7pm. (Statement of Genuine Issues ("SGI") ¶ 9.) Powers was Malcuit's training officer that night. (Id. ¶ 91.) At Domino's, the officers interviewed one of the delivery men, Wilfredo Flores, who

---

[1] Plaintiff was arrested for violating California Penal Code § 211. See also § 212.5 (defining second degree robbery as, among other things, a robbery that is not of a person using an automated teller machine or operating a motor vehicle).

said that he had been robbed earlier in the evening at 8070 Langdon Avenue in Van Nuys. (Id. ¶ 10.) Flores does not speak fluent English and his manager, Tony Juarez, translated the information provided by Flores from Spanish to the officers. (Id. ¶ 11.)

While Flores was making the delivery to 8070 Langdon Avenue, a man approached him, demanded money, and threatened him with a pocket knife. (Id. ¶ 12.) Flores stated the man was physically close to him while demanding the money, and that he was approximately 5' 5", 200 pounds, 26 to 27 years old, and had a light mustache or goatee. (Id. ¶ 13.) Flores also stated that the man had a tattoo around the throat or neck area that was similar to a barbed-wire design. (Id. ¶ 16.) After taking Flores' money, the man crossed the street to join a group of people in front of a building there. (Id. ¶ 17.) Malcuit prepared a preliminary investigation report of this interview, and then he and Powers went to 8070 Langdon Avenue.

Upon arriving at Langdon Avenue, Malcuit saw Plaintiff seated on the steps of the apartment complex across from 8070 Langdon (at 8101 Langdon Avenue). (Id. ¶ 20.) Malcuit believed that Plaintiff matched Flores' description because of his overall similarity to the description and because he had a distinctive tattoo at the neck area. (Id. ¶ 21.) Malcuit then detained Plaintiff and requested that another police unit bring Flores to the scene to identify Plaintiff (called a "field show-up"). (Id. ¶ 22.) The standard procedure for a field show-up is that the victim or witness be given an "admonition" before an officer requests an identification of a suspect. (Pl. Append., Ex. 6, Koman Depo. 27-28.) Because a one-on-one confrontation between a suspect and a witness is

2

1  suggestive of guilt, an admonition is designed to prevent
2  unnecessary bias. (Koman Depo. Ex. 2, LAPD Training Bulletin at
3  2.) The admonition consists of the officer informing the witness
4  that the suspect is a "possible suspect only," that the suspect's
5  presence in police custody "does not indicate guilt or innocence,"
6  and that the "purpose of the identification is either to eliminate
7  or identify the person as the perpetrator" of the crime. (Id.)
8      Flores was then driven to the area and, from a police car,
9  identified Plaintiff as the person who had robbed him. (Id. ¶ 24.)
10 The parties dispute whether Flores was given an adequate admonition
11 prior to making this identification. (D. Response to SGI ("D.
12 Response") ¶ 51.) Neither side presents any direct evidence as to
13 whether an admonition was given or what exactly Flores understood.
14 (Id. ¶ 52.) However, Flores does not speak fluent English and the
15 officers who had driven him to the area did not speak Spanish.
16 (Id. ¶ 52.) When Malcuit was informed by the first set of officers
17 with Flores that they did not speak Spanish and Flores only spoke
18 Spanish, Malcuit requested that Flores be given an admonition by
19 Spanish-speaking police and make a second identification. (SGI ¶
20 25.) After the second unit arrived, Flores was given an admonition
21 in Spanish, although the second unit was not aware that Flores had
22 already identified Plaintiff once.[2] (D. Response ¶ 53.) Flores
23 then identified Plaintiff again as the person who had robbed him.
24 (SGI ¶ 26-29.)

---

[2] Neither side presents evidence as to whether the second unit of officers informed Flores that he could change his mind from his original identification of Plaintiff. (See D. Response ¶ 53.)

3

1    In both identifications, Flores' identification was based on
2 the appearance of Plaintiff's general appearance and tattoo. (SGI
3 ¶ 29.) Officer Malcuit was not present in the vehicle during
4 either of these identifications. (SGI ¶ 36.) After fellow
5 officers informed Malcuit that Plaintiff had been identified by
6 Flores a second time, he arrested Plaintiff. (SGI ¶¶ 30-31.)
7 Officer Malcuit stated that he did not believe there was probable
8 cause to arrest Plaintiff before Flores positively identified
9 Plaintiff as the robber. (Id. ¶ 47.)
10    In his final arrest report, Officer Malcuit did not include
11 that there had been two identifications, and that an admonition was
12 not given before the first, and instead Malcuit only referenced the
13 second identification (which included an admonition). (D. Response
14 ¶ 89.) Malcuit had originally intended to include the first
15 identification and failure to give an admonition, but was told by
16 the Detective Watch Commander, Detective Minton, to not include it.
17 (D. Response ¶ 89.) Officer Powers also agreed that Malcuit should
18 omit the first identification from the final arrest report.
19 (Malcuit Depo. ¶ 149:4-6.)
20    However, at the preliminary hearing to determine probable
21 cause for prosecution, Plaintiff's counsel raised the issue of the
22 two identifications, and conducted cross-examination and made legal
23 argument based on its omission from the arrest report. (Prelim.
24 Hearing Tr. 47:23-28.) Again, Plaintiff was acquitted, but was
25 imprisoned for approximately six months while waiting for trial
26 because he could not make bail or afford private counsel. (SGI ¶¶
27 95-96.)
28

After acquittal, Plaintiff filed the present suit. Pursuant to the parties' stipulation, on March 10, 2008, the Court dismissed with prejudice Plaintiff's state law claims for false imprisonment, negligence, and gross negligence. Plaintiff's remaining claims include numerous violations of federal law under 42 U.S.C. § 1983, as well as claims for equitable and injunctive relief.

Defendants now move for summary judgment on Plaintiff's remaining claims.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A.  Evidentiary Issues and Violation of Local Rules

Defendants request that the Court take judicial notice of the certified docket from Los Angeles County Superior Court, the

transcript from Plaintiff's preliminary hearing, and the reporter's transcript from the trial in state court. Plaintiff does not oppose this request. The Court takes judicial notice of the transcripts from the hearing and trial, but not the docket.

Defendants also request that the portion of Plaintiff's opposition which exceeds 25 pages (the opposition has 34 pages) be stricken. C.D. Cal. L. R. 11-6. As Defendants have had an opportunity to respond to Plaintiff's opposition in their reply and only submitted 14 pages to do so, versus the permissible 25, the Court finds no prejudice from Plaintiff's opposition and declines to strike the excess pages.

B.  <u>Collateral Estoppel of Issue of Probable Cause</u>

State decisions are entitled to "full faith and credit" in federal court. 28 U.S.C. § 1738. A federal court must give a state court judgment the same effect it would have in the state in which it was rendered, and thus the state's doctrine of collateral estoppel applies in federal court. <u>Matsushita Elec. Indus. Co., Ltd. v. Epstein</u>, 516 U.S. 367, 373 (1996)). In California, the elements of collateral estoppel are: "(1) the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and (3) necessarily decided; (4) the doctrine is asserted against a party to the former action or one who was in privity with such a party; and (5) the former decision is final and was made on the merits." <u>Kelly v. Vons Cos.</u>, 67 Cal. App. 4th 1329, 1339 (Cal. Ct. App. 1998).

In Plaintiff's opposition, he concedes that all of his § 1983 claims under the Fourth and Fourteenth Amendments are premised in part on the argument that there was no probable cause for his

6

arrest.[3] (Opp'n 18:15-18.)  The state court addressed the issue of probable cause in a preliminary hearing after Plaintiff's arrest on February 21, 2006 and determined that probable cause existed to arrest Plaintiff.  (Prelim. Hearing Tr. 50:7-25.)  In California, "a decision by a a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes <u>prima facie</u> -- but not <u>conclusive</u> -- evidence of probable cause."  <u>Awabdy v. City of Adelanto</u>, 368 F.3d 1062, 1067 (9th Cir. 2004).  Consequently, a preliminary hearing that determines probable cause to arrest may bar subsequent claims under § 1983 based on this issue, but not in all circumstances.  <u>Haupt v. Dillard</u>, 17 F.3d 285, 289 (9th Cir. 1994); <u>Awabdy</u>, 368 F.3d at 1067 ("[A] [civil] plaintiff [in a § 1983 action] can rebut a <u>prima facie</u> finding of probable cause [] by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith."); <u>McCutchen v. City of Montclair</u>, 73 Cal. App. 4th 1138, 1147 (Cal. Ct. App. 1999)(finding that collateral estoppel may not apply where a defendant does not litigate the probable cause issue for tactical reasons).  As relevant here, a preliminary hearing on probable cause also does not bar later litigation where "additional evidence of a defendant's guilt" is presented at the hearing that was not present when the original arrest was made.  <u>Haupt</u>, 17 F.3d at 289.

    Plaintiff points to two pieces of evidence which were presented at the preliminary hearing which were not considered by

---

[3] As discussed more fully below, Plaintiff also argues that it was unconstitutional for Officer Malcuit to fail to disclose in his arrest report that Flores had identified Plaintiff twice, the first time without an admonishment.

7

Officer Malcuit in arresting him: (1) his prior criminal record and (2) testimony by his then-fiancee which was intended to exonerate him. (See SGI ¶¶ 149-150.) Plaintiff argues that this evidence was, at minimum, considered by the judge at the hearing and therefore the Haupt exception applies. In the transcript of the hearing, the court stated that the "totality of the evidence" supported its finding of probable cause. As Defendants note, the court only supports its finding by mentioning the victim's description of the perpetrator's tattoo and facial hair, which matched Plaintiff's, and the proximity in time of Plaintiff's appearance outside his building to the robbery. (Pessis Decl. Ex. 2, Prelim. Hearing Tr. 48:8-19.) However, the test is not dependent on whether the court relied on new evidence, but merely whether there is "a showing that evidence not available to the arresting officer was presented at the preliminary hearing." McCutchen, 73 Cal. App. 4th at 1146 (citing Haupt, 17 F.3d at 289).

Therefore, the Court finds that there is not an identity of issues such that Plaintiff is barred from litigating the issue of probable cause.

D. Claims under 42 U.S.C. § 1983

Where multiple constitutional violations are alleged, each must be examined separately. Soldal v. Cook County, Ill., 506 U.S. 56, 70 (1992). Plaintiff alleges that his arrest and incarceration constituted:

1) an unreasonable seizure under the Fourth Amendment;
2) malicious prosecution under the Fourth Amendment
3) a violation of procedural due process under the Fourteenth Amendment;
4) a violation of substantive due process under the Fourteenth Amendment;

8

       5) a violation of equal protection under the Fourteenth Amendment;
       6) cruel and unusual punishment under the Eighth Amendment; and
       7) conspiracy to violate the above rights.

(Compl. ¶¶ 36-45.)  Defendants argue these separate issues are more correctly described as claims for "false arrest," "false imprisonment," and "malicious prosecution." (Mot. 7.)  Plaintiff does not dispute this characterization.  However, for the purposes of clarity, the Court will analyze these issues under the relevant constitutional claims from Plaintiff's complaint.

     Plaintiff concedes that all of his § 1983 claims under the Fourth and Fourteenth Amendments are premised on the arguments that (1) there was no probable cause for his arrest and (2) Officer Malcuit's failure to disclose Flores' first identification of Plaintiff in his final arrest report was unconstitutional.  (Opp'n 18:15-18.)  The Court will first analyze the question of probable cause.

        1.   <u>Probable Cause</u>

     The Constitution permits public arrest of a suspect without a warrant where probable cause exists to believe the suspect has committed a crime.  See <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 36 (1979).  Whether the suspect actually committed the offense or, as here, was later acquitted of the offense is "irrelevant to the validity of the arrest." <u>Id.</u>  Probable cause to justify an arrest exists where "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." <u>Id.</u> at 37; see also <u>Torres v. City of L.A.</u>,

9

548 F.3d 1197, 1206-1207 (9th Cir. 2008)("While conclusive evidence of guilt is of course not necessary . . . to establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough.")(internal quotation omitted). Additionally, probable cause may be based on the collective knowledge of all the officers involved in the criminal investigation, "even if those facts are not communicated to the officer making an arrest or stop." United States v. Ramirez, 473 F.3d 1026, 1032 (9th Cir. 2007).

To begin, there is no genuine dispute of material fact regarding the basic information gathered by Officer Malcuit about the person who had robbed Flores. Flores stated that the robber was Hispanic, approximately 5'4" or 5'5", with light facial hair in the shape of a mustache or goatee, approximately 26-27 years old, and with a tattoo at or near his neck consistent with a barbed-wire design. (SGI ¶¶ 15-16.) There is also no dispute that Officer Malcuit saw Plaintiff seated on the steps in front of the apartment complex across the street from where the robbery occurred, within one hour of the robbery. (Meza Decl. ¶ 4.) Finally, there is no dispute that Officer Malcuit believed Flores was a credible witness. (SGI ¶ 35.) However, while these facts support Plaintiff's arrest, "mere resemblance to a general description is not enough to establish probable cause." Torres v. City of L.A., 548 F.3d 1197, 1208 (9th Cir. 2008).

Officer Malcuit's determination of probable cause was primarily based on Flores' identification of Plaintiff as his assailant. Flores identified Plaintiff twice in field show-ups, both times while Plaintiff was handcuffed, standing in the street

near the crime scene, lit by police headlights, and standing next to Officer Malcuit. For both identifications, Flores was sitting in the back of a police car with its lights on Plaintiff. "[Field] show-ups are not objectionable unless the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." United States v. Kessler, 692 F.2d 584, 586 (9th Cir. 1982)(internal quotation omitted); see also Torres, 548 F.3d at 1208 (discussing the reliability of a photo array). The factors or indicia demonstrating reliability of an identification are: "1) the opportunity to view the criminal at the time of the crime; 2) the degree of attention paid to the criminal; 3) the accuracy of the prior descriptions of the criminal; 4) the level of certainty demonstrated at the time of the confrontation; and 5) the length of time between the crime and the confrontation." Torres, 548 F.3d at 1209 (citations and quotations omitted); see also United States v. Bagley, 772 F.2d 482, 492 (9th Cir. 1985)(a court should examine the "totality of the circumstances" to examine whether "a challenged identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of mistaken identification").

There is no genuine dispute as to the first three factors, which suggest Flores' identification was reliable. Flores saw his assailant from up-close at the time of the crime and paid sufficient attention to him to be able to identify a precise general appearance - his ethnicity, clothing, eyes, facial hair, height, age and build, and a distinctive tattoo similar to barbed wire at or near his neck. The fifth factor is also undisputed, and

11

weighs in favor of reliability. Flores identified Plaintiff less than one hour after he was robbed. Regarding the fourth factor, neither party provides any evidence or argument as to whether Flores' first or second identification was certain or uncertain. Therefore, most indicia weigh in favor of finding that Flores' identification was reliable.

Nevertheless, Plaintiff disputes the reliability of Flores' identification under the totality of the circumstances for three reasons: (1) Flores was not given an admonition before his first identification of Plaintiff,[4] (2) Flores' description of Plaintiff did not match his actual appearance, and (3) Flores' identification was from a greater distance than the maximum allowed by LAPD policy. The Court finds that these arguments do not raise a genuine dispute of material fact as to whether Flores' field show-up was so suggestive that it created a "very substantial likelihood of irreparable misidentification." Kessler, 692 F.2d at 586.

Although a proper pre-identification admonition does weigh in favor of reliability, Plaintiff provides no caselaw suggesting a failure to give this admonition is per se evidence of unreliability. Plaintiff also does not point to any authority

---

[4] Again, neither side provides direct evidence regarding whether Flores was actually given an admonition before his first identification of Plaintiff or his actual level of understanding, presuming an admonition was given. However, the parties present evidence that Flores was not a fluent English speaker, that the officers with him at his first identification did not speak fluent Spanish and stated Flores only spoke Spanish, and that Officer Malcuit's interview with Flores was almost exclusively with a Spanish translator. Combined with the fact that Flores was given a second admonition in Spanish, and as Plaintiff is the non-moving party, it is reasonable to infer that Flores was not given an initial admonition or that the first admonition was not clearly understood by him.

12

suggesting that Plaintiff's second identification is "tainted" by the first.  The evidence itself shows that Flores was given an admonition in Spanish by a second group of officers, and that he again identified Plaintiff.  While the second group of officers did not inform Flores of the right to change his mind, it is not reasonable to infer from this that Plaintiff was incapable of altering his opinion at the second identification, because no other evidence supports this interpretation.  The second set of officers admonished Flores that he should not consider Plaintiff a suspect merely because he was in police custody, they spoke to him in Spanish, and the first set of officers was not present in the car at the second identification.

   Similarly, Plaintiff's other arguments do not raise genuine issues of material fact.  Plaintiff argues that his actual appearance does not match Flores' description.  For example, Plaintiff has a tattoo near his neck, but it is of scripted letters, not barbed wire.  Plaintiff also had a tear-shaped tattoo[5] under one eye that was not mentioned by Flores; and Plaintiff is one-inch shorter than Flores, whereas Flores' assailant was one-inch taller.[6]  But these qualities do not make Flores' description imprecise, they simply constitute a more precise description.

---

[5] Plaintiff apparently no longer has this tattoo. (Meza Decl. ¶ 10.)

[6] Plaintiff also mentions a number of other facts which suggest he was not the assailant, including that Flores was robbed by a member of a group and Plaintiff was alone at his arrest, Plaintiff wasn't carrying a switchblade as the robber was, the robber took $15 but Plaintiff only had $5 on him at arrest, and that Plaintiff was wearing different clothes than the robber.

Plaintiff also argues that Flores' original identification of him was from 35 feet away, which is beyond the recommended maximum of the LAPD for field show-up identifications and thus implies unreliability. Even granting Plaintiff this inference, as noted above, various undisputed facts suggest reliability, including the use of two identifications, one admonition, and that Flores' view of the robber was up-close - aiding in the precision of his recollection. Furthermore, "[a] detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability." United States v. Elliott, 893 F.2d 220, 223 (9th Cir. 1990). In sum, examining the totality of the circumstances and granting all reasonable inferences to Plaintiff, no rational trier of fact could find that a field show-up identification at 35 feet, versus 30 feet, creates a genuine dispute as to whether there is a very substantial likelihood of irreparable misidentification. See United States v. Simoy, 998 F.2d 751, 753 (9th Cir. 1993)(finding that the witness' identification was reliable, based on other factors, even though the identification was 45 feet away, in the dark under a breezeway, and the witness viewed the perpetrator's face for five seconds). Therefore, the Court finds as a matter of law that Flores' identification of Plaintiff was reliable.

An identification by a victim and eye-witness of his or her assailant is sufficient grounds to give rise to probable cause. See Elliott, 893 F.2d at 225. Accordingly, the Court finds that probable cause existed to arrest Plaintiff as a matter of law.

        2.    <u>Unreasonable Seizure and Malicious Prosecution - Fourth Amendment</u>

"An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1988). Similarly, for a malicious prosecution claim under the Fourth Amendment, a plaintiff must prove prosecution without probable cause. Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).

Plaintiff's argument for these claims is based on the absence of probable cause at his arrest by Officer Malcuit. As the Court has found that probable cause existed to arrest Plaintiff, his Fourth Amendment claims for false arrest and malicious prosecution fail as a matter of law.

### 3. Substantive Due Process - Fourteenth Amendment

#### a. False Arrest and Malicious Prosecution

Plaintiff's claims for false arrest and malicious prosecution fall squarely under the Fourth Amendment and must be analyzed according to its principles, rather than any generalized notion of substantive due process. See County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998). Accordingly, to the degree Plaintiff's due process claims under the Fourteenth Amendment are premised on his alleged unlawful arrest or the absence of probable cause, they are dismissed.

#### b. Failure to Disclose Exculpatory Evidence

The suppression of evidence favorable to the accused upon his or her request "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83 (1963).

1  Plaintiff argues that the failure to include the first
2  identification (without prior admonition) in the arrest report
3  violates his rights.  However, this information was available,
4  presented, and argued by Plaintiff's counsel at the preliminary
5  hearing.  Therefore, it is apparent that Plaintiff "'had within
6  [his] knowledge the information by which [he] could have
7  ascertained the supposed [exculpatory evidence].'"  United States
8  v. Dupuy, 760 F.2d 1492, 1502 (9th Cir. 1985)(quoting United States
9  v. Griggs, 713 F.2d 672, 674 (11th Cir. 1983)).
10 As such, Plaintiff's Brady claim fails.  See id.
11           4.    Cruel and Unusual Punishment - Eigth Amendment
12 The Eigth Amendment does not apply where the government has
13 not "secured a formal adjudication of guilt."  Bell v. Wolfish, 441
14 U.S. 520, 537 n.17 (U.S. 1979)(internal quotation omitted).
15 As Plaintiff was acquitted at trial, the Eigth Amendment is
16 not applicable here and this claim is dismissed.
17           5.    Remaining Constitutional Claims
18 Defendants' motion is styled as a motion for summary judgment
19 and purports to address all of Plaintiff's claims, but it does not
20 expressly analyze Plaintiff's § 1983 claims for (1) a violation of
21 procedural due process under the Fourteenth Amendment or (2) a
22 violation of equal protection under the Fourteenth Amendment.
23 Instead, as noted above, Defendants argue that these claims are
24 actually claims for false arrest, false imprisonment, and malicious
25 prosecution.  Plaintiff does not dispute this characterization and
26 none of Plaintiff's argument addresses his claims for equal
27 protection or procedural due process.  In effect, Defendant's
28 argument is that Plaintiff has not raised sufficient evidence to

16

support his procedural due process or equal protection claims. On a motion for summary judgment, the moving party may carry its burden by showing that the non-moving party does not have evidence supporting an essential element of its cause of action. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

Therefore, as Plaintiff has presented no evidence supporting or creating a genuine dispute of material fact on these claims, they are dismissed as a matter of law.

### 6. Conspiracy

As Plaintiff's claims for violation of his civil rights fail, there can be no conspiracy to violate them.

### E. *Monell* Liability and Qualified Immunity of Officer Malcuit

As Plaintiff's claims for violation of his civil rights fail, the Court declines to address the issues of municipal liability and whether Officer Malcuit is immune from suit.

## IV. CONCLUSION

The Court GRANTS the motion for summary judgment. The Court denies Plaintiff's motion to amend the complaint as moot.

IT IS SO ORDERED.

Dated: May 26, 2009

DEAN D. PREGERSON
United States District Judge

17